UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LMI AEROSPACE, INC. d/b/a SONACA NORTH AMERICA,

Plaintiff,

26-cv-3655 (PKC)

-against-

OPINION AND ORDER

GKN AEROSPACE, INC. d/b/a GKN AEROSPACE PHOENIX,

Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

LMI Aerospace, Inc. d/b/a Sonaca North America ("Sonaca") is a manufacturer of aeronautical components. GKN Aerospace, Inc. d/b/a GKN Aerospace Phoenix ("GKN") supplies aerospace systems to aircraft manufacturers. Between 2023 and 2025, Sonaca supplied components to GKN under a Master Supply Agreement ("MSA"). Sonaca alleges that GKN has breached the MSA. Sonaca also brings claims for breach of the duty of good faith and fair dealing and fraudulent misrepresentation. GKN moves to dismiss all three claims for failure to state a claim for relief or, alternatively, for lack of subject matter jurisdiction. GKN also moves to dismiss Sonaca's demand for punitive damages and strike its demand for a jury trial.

For the reasons explained, the Court will deny the motion to dismiss as to the breach of contract claim. The Court concludes that Sonaca has plausibly alleged that GKN waived the contractual pre-suit mediation requirement. The Court will grant the motion to dismiss as to the claims for breach of the duty of good faith and fair dealing and fraudulent misrepresentation. The Court will also dismiss the claim for punitive damages and strike the jury demand.

BACKGROUND

For purposes of GKN's motion to dismiss, the Court accepts the Complaint's well-pleaded allegations as true and draws all reasonable inferences in Sonaca's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

The MSA between Sonaca and GKN came into effect on February 1, 2023. (Compl't ¶ 4.) Later that year, Sonaca and GKN entered into a Work Package Agreement ("WPA") under the MSA. (Id.) The WPA describes the aeronautical components Sonaca agreed to manufacture and supply to GKN, the process through which GKN would place orders for said components, and related matters. (Id.)

The parties performed under the contracts for more than a year. (Id. ¶ 5.) Then, on September 5, 2024, GKN sent a letter to Sonaca cancelling all open orders and describing quality and delivery performance concerns it had. (Id. ¶ 26; ECF 16-3.) Sonaca responded rejecting the cancellations and disputing the concerns. (Compl't ¶ 27; ECF 16-4.) GKN then chose to fully terminate the MSA. (Compl't ¶ 28; ECF 16-5.)

Both parties acknowledge that GKN had the right to terminate the MSA for convenience. (Compl't ¶¶ 18-20, 28-29; ECF 16-1 ¶ 52.4.) However, the MSA contains post-termination obligations. Most importantly, it requires GKN to acquire title to and pay Sonaca for all completed and uncompleted products and relevant materials that can be linked to GKN's orders ("Acquired Assets"). (Id. ¶¶ 21-25; ECF 16-1 ¶ 53.6.)

For almost a year after GKN terminated the MSA, GKN and Sonaca exchanged emails, letters, and data and conducted audits to assess the cost of the Acquired Assets for which GKN was responsible. (Id. ¶¶ 29-48.) Sonaca alleges that many of GKN's actions throughout this period were attempts to delay the payment process. (Id. ¶ 46-48.) Eventually, Sonaca

proposed mediation to resolve the issue. (Id. ¶ 47.) This proposal aligned with paragraph 56.3 of the MSA, which requires the parties to mediate disputes arising out of the MSA before filing suit in court. (ECF 16-1 ¶ 56.3.)

GKN responded that it was "willing to participate in mediation." (Compl't ¶ 48; ECF 16-16 at 3.) However, GKN also offered, "[r]ather than mediation," a two-step dispute resolution process: First, GKN would provide a settlement plan; second, the parties would meet at Sonaca's facilities for a "collaborative," "business-to-business" meeting, without lawyers present, to review the settlement plan and discuss the remaining "highly technical" details. (Compl't ¶ 48; ECF 16-16 at 3.)

On September 19, 2025, Sonaca sent a letter to GKN in which it agreed to this resolution process with three conditions:

> 1. The parties will communicate the week of September 22, 2025 to find a mutually convenient date after October 10, 2025 for the meeting.
> 2. The submission of the plan and project staff meeting will be in lieu of mediation as discussed at 56.3 of the MSA.
> 3. If the parties are unable to resolve the dispute through the above-referenced process then, consistent with 56.3 and 56.4 of the MSA, either party will have the right to bring a suit or proceeding in the federal or state courts of New York.

(Compl't ¶ 49; ECF 16-17 at 2.)

GKN did not immediately respond to Sonaca's proposed conditions. (ECF 21-1 at 3.) On September 26, counsel for Sonaca, Daniel Winters, followed up via e-mail. (Id.) Winters began his email explaining "[r]eference is made to my correspondence sent to you on September 19, 2025." (Id.) He noted the lack of response despite the timeline described in the September 19 letter. (Id.) He then asked if GKN still wanted to pursue the alternative resolution process. (Id.)

GKN's Senior Counsel, Geoffrey Beeson, responded the same day. (Id. at 2-3.) He explained that GKN's management team had not yet discussed the matter but had a meeting scheduled "to confirm the understanding and commitments that you propose in your letter." (Id. at 3.) A few days later, Beeson followed up with another response. (Id. at 2.) He wrote, "I can confirm that Sonaca's conditions on the plan moving forward are acceptable." (Id.; Compl't ¶ 79.)

GKN sent the settlement plan to Sonaca on October 11, 2025. (Compl't ¶ 51; ECF 16-18.) In the settlement plan, GKN identified $1.745 million in Acquired Assets. (ECF 16-18 at 3.) But GKN also described $662,000 in damages that it believed should offset the $1.745 million. (Id. at 4.) The two parties conducted their business-to-business meetings in November and December 2025. (Compl't ¶ 54.) Sonaca believed the parties were "close to a resolution," in part because GKN represented during the meetings that "GKN's 'counts' of Sonaca's inventory were nearly aligned with Sonaca's counts." (Id.)

On December 18, 2025, however, GKN sent another letter stating it still required more information before it could offer a settlement. (Id. ¶ 55; ECF 16-19 at 2-3.) Sonaca's response recounted all the information it had sent GKN since the MSA was terminated and demanded payment of $3.26 million to settle the dispute. (Compl't ¶¶ 56-58; ECF 16-20 at 5-6.) GKN, in turn, rejected Sonaca's characterization of events but also countered with a $1.18 million settlement offer. (Compl't ¶ 59; ECF 16-21 at 2-3.) To date, the parties have not reached a settlement. GKN also insists that the parties did not waive the MSA's mediation requirement and must attempt mediation before any suit may be filed in court. (Compl't ¶ 60.)

On June 2, 2026, Sonaca initiated this action, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, and fraudulent misrepresentation.

GKN has moved to dismiss all three claims, as well as Sonaca's demand for punitive damages, and moved to strike Sonaca's demand for a jury.

DISCUSSION

I. Rule 12(1)(b) Motion

GKN raises Rule 12(b)(1), Fed. R. Civ. P., as an alternative basis for dismissal. (ECF 26 at 2.) Rule 12(b)(1) provides for dismissal based on a lack of subject matter jurisdiction. However, GKN does not make any arguments relating to subject matter jurisdiction. GKN's entire discussion of Rule 12(b)(1) is confined to two sentences in the "Legal Standards" section of its initial brief. (Id.)

The Court has subject matter jurisdiction by reason of diversity of citizenship, 28 U.S.C. 1332(a)(1). Sonaca is incorporated in and has its principal place of business in Missouri. (ECF 17 at 2.) GKN is incorporated in Delaware and has its principal place of business in Texas. (ECF 19 at 2.) The amount in controversy is at least $3.26 million. (Compl't at 18.)

The Court will deny the motion to dismiss for lack of subject matter jurisdiction.

II. Legal Standard on a Rule 12(b)(6) Motion

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotations omitted). A court must disregard legal conclusions, which are not entitled to the presumption of truth, and instead examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 678-79. In assessing plausibility, courts draw all reasonable inferences in favor of the non-movant. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). "Dismissal is

appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.' " Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

"For purposes of [Rule 12(b)(6)], 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). "Where a document is not incorporated by reference, the court may neverless [sic] consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). But, " 'even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document,' and it must be clear that 'there exist no material disputed issues of fact regarding the relevance of the document.' " United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021) (quoting DiFolco, 622 F.3d at 111).

Sonaca relies upon the September 26-30, 2025, emails between Daniel Winters and Geoffrey Beeson, but did not attach them as an exhibit to the Complaint. At paragraph seventy-nine of the Complaint, however, Sonaca quotes from one of the emails stating, "GKN confirmed that, 'that [sic] Sonaca's conditions on the plan moving forward are acceptable.' " (Compl't ¶ 79.) Therefore, the Court may consider the purportedly confirmatory email and those immediately preceding it as they are incorporated in the Complaint by reference. See Leroy v. Delta Air Lines, No. 21-267-cv, 2022 WL 12144507, at *1 n.2 (2d Cir. Oct. 27, 2022) (summary

order) (finding a document incorporated where it was "reference[d]" in the complaint, was "central to [the] allegations," and no party contested "its accuracy or authenticity" (citing Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009)); see also id. at *5 (Bianco, J., dissenting) (noting that the document in question "was mentioned only in passing in the complaint, without any discussion of its contents").

Even if the emails are not incorporated by reference, the Court may still consider them because they are "integral" to Sonaca's claims. In L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011), the Second Circuit recognized as integral emails that were part of a negotiation exchange the plaintiff identified as the basis for its Complaint. Here too, the emails in question were part of the negotiations that form the basis of Sonaca's claims. See also Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint."). Further, GKN had notice of the emails and discussed them at length in its briefs, but has never challenged the emails' authenticity nor pointed to any disputed issues of fact regarding their relevance. (ECF 26 at 5-6; ECF 28 at 3-5.) See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (noting that where a party had notice of emails because it sent or received them, that notice supported a finding that the emails were integral). The emails are both incorporated into the Complaint by reference and integral to the Complaint. The Court may consider them in adjudicating this motion to dismiss.

## III. Sonaca Plausibly States a Claim for Breach of Contract

The MSA contains a New York choice of law provision. (ECF 16-1 ¶ 56.2 ("This MSA and every other Contract Document . . . shall be governed by and construed in accordance

with the laws of New York, excluding its choice of law provisions.")) "New York law gives full effect to parties' choice-of-law provisions." Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996); N.Y. Gen. Oblig. Law § 5-1401 (McKinney 2018). The Court will apply New York substantive law to the contract-based claims.

GKN does not argue that Sonaca has failed to allege enough facts to state a claim for breach of contract under New York law. Instead, GKN argues the Court should dismiss Sonaca's breach of contract claim without prejudice because Sonaca failed to comply with the pre-suit mediation requirement in the MSA that it asserts to be a condition precedent. (ECF 26 at 3-6; ECF 16-1 ¶ 56.3.) Sonaca responds that the parties validly waived the mediation condition precedent. (ECF 27 at 4-6.)

"Under New York law, a claim of waiver requires proof of an 'intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it.' " Capitol Recs., Inc. v. Naxos of Am., Inc., 372 F.3d 471, 482 (2d Cir. 2004) (quoting Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp., 76 A.D.2d 68, 81 (4th Dep't 1980)). "The conduct constituting a waiver must be 'clear, unmistakable and without ambiguity.' " Flo & Eddie, Inc. v. Sirius XM Radio Inc., 80 F. Supp. 3d 535, 540 (S.D.N.Y. 2015) (McMahon, J.) (quoting Civ. Serv. Emps. Ass'n, Inc. v. Newman, 88 A.D.2d 685, 686 (3d Dep't 1982) aff'd, 61 N.Y.2d 1001 (1984)).

Sonaca has plausibly alleged wavier. Sonaca proposed the waiver in its September 19 letter. (ECF 16-17.) In that letter, Sonaca agreed to GKN's proposed resolution process on three conditions or "understandings." (Id. at 2.) Both the second and third conditions each clearly and unambiguously required waiver of the mediation requirement. (Id. ("2. The submission of the plan and project staff meeting will be in lieu of mediation as discussed at 56.3

of the MSA. 3. If the parties are unable to resolve the dispute through the above-referenced process then, consistent with 56.3 and 56.4 of the MSA, either party will have the right to bring a suit or proceeding in the federal or state courts of New York.").)

Beeson, Senior Counsel at GKN, accepted these conditions in his September 30 email to Winters, Sonaca's counsel. (ECF 21-1 at 2 ("I can confirm that Sonaca's conditions on the plan moving forward are acceptable.").) Beeson signed this email "- Geoff" above his automatic signature. (Id.) The parties disagree on whether a signed writing was required to modify the MSA under New York law. (ECF 26 at 5; ECF 27 at 7.) Regardless, Beeson's signature on the email makes it a signed writing plausibly accepting Sonaca's conditions. See RCC Ventures, LLC v. Am. DG Energy, Inc., No. 17 Civ. 3007, 2018 WL 1415219, at *4-5 (S.D.N.Y. Mar. 19, 2018) (Nathan, J.) ("Under New York law, emails 'constitute signed writings' because a party's 'name at the end of his e-mail signifies his intent to authenticate the contents.' " (quoting Stevens v. Publicis, S.A., 50 A.D.3d 253, 255-56 (1st Dep't 2008), appeal dismissed, 10 N.Y.3d 930 (2008))); see also Garcia v. Dezba Asset Recovery, Inc., 665 F. Supp. 3d 390, 403 n.2 (S.D.N.Y. 2023) (Karas, J.) (discussing and collecting cases that find an automatic signature block may not be sufficient to meet the Statute of Frauds signed writing requirement, but a manually typed name is sufficient). Both sides agreed that the alternative resolution process was "in lieu of mediation" as required by the MSA and proceeded with that alternative process from October to December 2025. (Compl't ¶¶ 51, 54; ECF 16-18.)

GKN argues Beeson only agreed GKN would provide a settlement plan and help arrange the subsequent meetings. (ECF 26 at 6.) But Beeson's September 30 email, which responded to Sonaca's September 19 letter, cannot be fairly read in that manner. Beeson expressed an understanding that Winters was asking him "to confirm the understanding and

commitments that you propose in your letter." (ECF 21-1 at 3 (emphasis added).) Beeson then confirmed "that Sonaca's conditions on the plan moving forward are acceptable." (Id. at 2.) These facts are sufficient to plausibly allege a proper waiver of the mediation requirement.

GKN also argues that, under New York law, an email can only modify a contract if "the terms of the proposed modification are set forth in the email." In re 4Kids Ent., Inc., 463 B.R. 610, 693 (Bankr. S.D.N.Y. 2011) (Chapman, Bankr. J.) (citing Stevens, 50 A.D.3d at 255-56). GKN believes the email acceptance did not meet this requirement because the terms of the mediation waiver were not copied from Sonaca's September 19 letter into one of the emails in the chain. (ECF 26 at 5; ECF 28 at 3-4.) In GKN's view, the fact that Winters explicitly invoked Sonaca's earlier letter containing the waiver terms is not enough. GKN reads a requirement into New York law that does not exist. Before the advent of emails, the text of a letter was never required to be restated in the text of a responsive letter for there to be a waiver or novation. See Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572-73 (2d Cir. 1993). New York law contemplates that a waiver can exist in a "writing or group of writings." Naldi v. Grunberg, 80 A.D.3d 1, 15-16 (1st Dep't 2010) (emphasis added). Winters's invocation of the September 19 letter (ECF 21-1 at 4.) paired with Beeson's stated understanding that he was being asked to "confirm the understanding and commitments that [Sonaca] propose[d] in [its] letter" is enough to reasonably infer acceptance of all of Sonaca's conditions. (ECF 21-1 at 3.)

Sonaca alleges enough facts to plausibly show waiver of the MSA's mediation requirement. The Court will not dismiss the claim for breach of contract.

IV. Sonaca Does Not Plausibly State a Claim for Breach of the Duty of Good Faith and Fair Dealing

Sonaca also brings a claim for breach of the duty of good faith and fair dealing based on GKN's delay of its post-termination obligation to pay Sonaca for the Acquired Assets. (Compl't ¶¶ 72-73.) GKN argues that this claim should be dismissed because it is duplicative of Sonaca's breach of contract claim. (ECF 26 at 7-8.)

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) (quoting Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002)). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." Id.

The Court concludes that the claim for breach of the implied covenant is duplicative of the breach of contract claim. The underlying conduct is identical: failure to pay for the Acquired Assets in the manner or time frame outlined in the MSA. Sonaca attempts to differentiate the conduct by emphasizing GKN's alleged delay tactics in its claim for breach of the covenant. At its core, though, this conduct still amounts to nonpayment in the manner or time frame described in the MSA. Concesionaria DHM, S.A. v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) (Koeltl, J.) (dismissing a similar claim because "[t]he predicate conduct for the claims is the same, despite the attempt to emphasize different aspects of the conduct in the implied covenant claim"). Additionally, the damages Sonaca alleges in relation to the breach of the implied covenant—storage costs for the Acquired Assets—are also recoverable through the breach of contract claim. Because the underlying facts and damages are identical,

the Court will dismiss the claim for breach of the covenant of good faith and fair dealing. See Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc., 810 F.3d 861, 869 (2d Cir. 2015).

V. Sonaca Does Not Plausibly State a Claim for Fraudulent Misrepresentation

Lastly, Sonaca brings a claim for fraudulent misrepresentation premised on GKN's alleged misrepresentation of its intention to faithfully take part in the alternative resolution process it proposed. (Compl't ¶¶ 76-87.) GKN asks the court to dismiss this claim both because it fails to meet the heightened Rule 9(b), Fed. R. Civ. P., pleading standard and because it too is duplicative of the breach of contract claim.

a. The Fraudulent Misrepresentation Claim Fails Rule 9(b)

Under New York law, to state a claim for fraudulent misrepresentation a plaintiff must plausibly allege "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 186-87 (2d Cir. 2004) (quotations omitted). Additionally, a claim of fraud must meet the higher Rule 9(b) pleading requirements. "Rule 9(b) permits scienter to be averred generally, but 'we have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.' " United States ex rel. Tessler v. City of New York, 712 F. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)). "The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." United States v. Strock, 982 F.3d 51, 66 (2d Cir. 2020) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d

273, 290-91 (2d Cir. 2006)). "An inference is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.' " Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 176-77 (2d Cir. 2015) (quoting Tellabs, Inc. v. Makor Issues & Rts, Ltd., 551 U.S. 308, 324 (2007)). "In determining whether this strength-of-inference requirement is met, 'we consider the complaint in its entirety and take into account plausible opposing inferences.' " Id. at 177 (quoting Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 106 (2d Cir. 2015), overruled on other grounds by Macquarie Infrastructure Corp. v. Moab Partners, L.P., 601 U.S. 257 (2024)).

Sonaca alleges two specific misrepresentations: first, GKN's agreement to pursue a collaborative resolution process in lieu of mediation and, second, GKN's identified "baseline payment amount" in its settlement plan. (Compl't ¶¶ 77-80; ECF 27 at 9.) Sonaca argues these statements were false at the time GKN made them, and GKN never intended to follow through. (Compl't ¶¶ 81, 84.) Sonaca's alleged evidence of fraudulent intent is, first, GKN's failure to follow through by providing a settlement offer commensurate with what was proposed in the settlement plan; second, GKN's demand for mediation after initially agreeing to waive it; and, third, disparity between what an unnamed GKN representative said during the settlement plan meetings and what was later communicated to Sonaca via letter. (ECF 27 at 10.) The Court concludes that these alleged facts do not plausibly show that GKN intended to defraud.

"Under New York law, fraudulent intent is not demonstrated by evidence of mere non-performance of a promise." Murray v. Xerox Corp., 811 F.2d 118, 122 (2d Cir. 1987). "[A]n inference that the promisor never intended to fulfill his promise should not be based solely upon the assertion that the promise was not, in fact, fulfilled." Braddock v. Braddock, 60 A.D.3d

84, 89 (1st Dep't 2009). Therefore, on their own, Sonaca's first two cited circumstances do not create an inference of fraudulent intent, let alone a strong inference.

Sonaca's pleadings rest on the alleged disparity between what GKN representatives communicated to Sonaca during in-person meetings and what GKN communicated in its letter following the meetings. This disparity does not "constitute strong circumstantial evidence of conscious misbehavior or recklessness." Strock, 982 F.3d at 66. There are more compelling inferences to be made, including, for example, miscommunication or differences of opinion or belief among various representatives of GKN. See Loreley Fin. (Jersey) No. 3 Ltd., 797 F.3d at 176-77 ("An inference is strong if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." (quotations omitted)).

Sonaca has failed to plausibly allege an intent to deceive sufficient to support its fraudulent misrepresentation claim.

b. The Fraudulent Misrepresentation Claim Is Duplicative

Sonaca's fraudulent misrepresentation claim must also be dismissed because it is duplicative of the breach of contract claim.

Under New York Law, a fraud claim is distinct from a breach of contract claim only when a plaintiff can "(i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996). A claim is "collateral" if it alleges "misrepresentations of present fact, not merely misrepresentations of future intent to perform under the contract." Wyle Inc. v. ITT Corp., 130 A.D.3d 438, 439 (1st Dep't 2015).

Even if GKN never intended to follow through on its commitment to the alternative resolution process, that is a misrepresentation of its intent to perform under the contract. Sonaca attempts to differentiate by arguing that the misrepresentation related to the alternative resolution process, not the contractual dispute itself. But the alternative resolution process only existed as a means to enable the parties to reach an agreement on the amount GKN needed to pay to perform under the contract. Sonaca points to no present facts that GKN concealed or misrepresented. See Xeriant, Inc. v. XTI Aircraft Co., 762 F. Supp. 3d 345, 357 (S.D.N.Y. 2025) (Oetken, J.) (providing examples of claims that were "present facts" and claims that were "simply a promise to perform"). The fraudulent misrepresentation claim is no more than a promise to perform under the contract and is therefore duplicative of the breach of contract claim.

VI. Remaining Issues

GKN and Sonaca address two other issues in their briefs.

First, GKN asks the Court strike Sonaca's jury demand as the MSA requires all disputes be resolved by bench trial. (ECF 16-1 ¶ 56.5.) Sonaca does not oppose a bench trial. (ECF 27 at 12.) The Court will strike the jury demand.

Second, GKN asks the court to dismiss Sonaca's demand for punitive damages. "Under New York law, damages arising from the breach of a contract are 'ordinarily limited to the contract damages necessary to redress the private wrong.' " Scottsdale Ins. Co. v. McGrath, 549 F. Supp. 3d 334, 355 (S.D.N.Y. 2021) (Liman, J.) (quoting N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 315 (1995)). "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." In re Part

60 Put-Back Litig., 36 N.Y.3d 342, 360 (2020) (quoting N.Y. Univ., 87 N.Y.2d at 316). The Court has dismissed Sonaca's only tort claim that could have, in theory, supported punitive damages. Accordingly, Sonaca fails the "threshold task." Id.; see also TVT Recs. v. Island Def Jam Music Grp., 412 F.3d 82, 93 n.10 (2d Cir. 2005) ("[O]ur dismissal of TVT's tort claims necessarily means that appellants' conduct was not actionable as an independent tort. This additional reason also warrants setting aside the award of punitive damages on TVT's contract claim." (quotations omitted)).

The Court will dismiss the claim for punitive damages.

CONCLUSION

GKN's motion to dismiss is DENIED as to Count I and GRANTED as to Counts II and III and the claim for punitive damages. The Court strikes Sonaca's jury demand. The parties shall meet and confer on a case management plan and scheduling order (see the Court website under Judge Castel for a model order) and submit within fourteen days. The Clerk is respectfully directed to terminate the motion (ECF 25).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 21, 2026